IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WEST END SQUARE, LTD., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-1871-BF |
| | § | ECF |
| GREAT AMERICAN INSURANCE | § | |
| COMPANY OF NEW YORK, et al., | § | |
| | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's Order of Transfer (doc. 12), this is now a consent case before the United States Magistrate Judge. Before this Court is plaintiff West End Square, Ltd.'s (the "Plaintiff") motion to remand (doc. 8) and two of the defendants in this case, Great American Insurance Company of New York's ("Great American") and Bob Thomas' ("Thomas") motion to dismiss Thomas (doc. 14). Because both motions present the same issues, they will be considered together. For the reasons stated below, this Court determines that the motion to remand is granted and the motion to dismiss is denied.

### I.

Plaintiff filed suit against Great American, Thomas, and Laureen Lehman ("Lehman") (collectively, the "Defendants") in the 116th Judicial District Court of Dallas County, Texas. Pl.'s Br. at 1. Great American issued an insurance policy to Plaintiff which provided coverage for certain damage to a building owned by Plaintiff located at 804 Pacific Avenue, Dallas, Texas. Defs.' Br. at 1. Great American subsequently removed this action to the District Court based upon diversity of citizenship jurisdiction. *Id.* at 1. Great American and Thomas contend that Thomas, a non-diverse defendant, was improperly joined and therefore should be disregarded in determining

diversity jurisdiction and also ask that Thomas be dismissed from this suit. *Id*. at 1-16. Plaintiff seeks to be remanded to the state court on the basis that Thomas was properly joined to this suit. Pl.'s Br. at 1-10.

Plaintiff's suit alleges that Defendants failed to timely and properly investigate and pay Plaintiff's insurance claim. Pl.'s Pet. at 2. Plaintiff's state court petition states that Thomas and Lehman were assigned to investigate Plaintiff's claim on behalf of Great American. *Id*. at 2. Plaintiff states that after it reported its claim, Lehman and Thomas made several requests for information during a period of over one year, including requests for documentation concerning the damages Plaintiff sustained in the losses to its building. *Id*. at 3. Plaintiff states that it complied with these requests, only to have the Defendants ask for more information. *Id*. Plaintiff contends that the additional requests were unreasonable and amount to an intentional delay in the processing of Plaintiff's claim. *Id*. Furthermore, Plaintiff states that it has allowed Defendants and their agents and/or investigators to inspect the premise in question and complied with all of Defendants' requests for information. *Id*. Plaintiff contends that those inspections gave Defendants the chance to view the damages and to make a determination regarding the cause and amount of Plaintiff's loss. *Id*. Plaintiff states that Lehman and Thomas investigated Plaintiff's claim for more than a year, but have failed to pay Plaintiff's claim. *Id*. Plaintiff alleges that although it is clear that Plaintiff's claim is owed, Great American, Thomas and Lehman have all delayed and denied payment for an unreasonable period of time. *Id*.

## II.

28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or

2

defendants, to the district court of the United States for the district and division embracing the place where such action is pending." If federal jurisdiction is based on diversity of citizenship, an action is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). "To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc). "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper [1]." *Id.* at 574 (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)).

"Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573. The Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). With regard to the "inability to establish" method, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* The Fifth Circuit explained, "To reduce

---

1. The Fifth Circuit has adopted "the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past." *Smallwood*, 385 F.3d at 568 n.1. Although the Fifth Circuit has explained that, "there is no substantive difference between the two terms, 'improper joinder' is [the] preferred" term. *Id.* at 573.

3

possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not." *Id*.

In order to determine whether a plaintiff might be able to recover against an in-state defendant, a court should ordinarily "conduct a Rule 12(b)(6)-type analysis[2], looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000); *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004); *Parks v. New York Times*, 308 F.2d 474, 478 (5th Cir. 1962)). However, in limited circumstances, a court has the discretion to conduct a summary inquiry. *Smallwood*, 385 F.3d at 573. The Fifth Circuit explained:

> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be

---

2. Courts should not grant a motion to dismiss unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When considering a motion to dismiss, the Court accepts as true all well-pleaded facts and views those facts in a light most favorable to the Plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). "However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Id*. (citation and internal quotations omitted). A "court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." *Id*. (citation and internal quotations omitted). "Further, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id*. (citation and internal quotations omitted).

4

> disproved if not true. In this inquiry, the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Smallwood*, 385 F.3d at 573-74 & n.12.

### III.

Great American and Thomas do not allege actual fraud in Plaintiff's pleading of jurisdictional facts. However, Great American and Thomas contend that Plaintiff will not be able to establish a cause of action against Thomas in state court. Defs.' Br. at 1 *passim*. With regard to the "inability to establish" method, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. In order to determine whether there is a reasonable basis to predict that Plaintiff may recover, this Court should "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against" Thomas. *See id*. (citing *Badon*, 236 F.3d at 286 n.4; *McKee*, 358 F.3d at 334; *Parks*, 308 F.2d at 478).

Plaintiff's state court petition makes the following allegations against Thomas as engaging in unfair claims settlement practices in violation of the Texas Insurance Code § 541.060 (formerly Article 21.21): (1) misrepresenting to a claimant a material fact or policy provision relating to

5

coverage at issue; (2) failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear; (3) failing within a reasonable time to affirm or deny coverage of a claim to a policyholder; or submit a reservation of rights to a policyholder; and (4) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.[3]  Pl.'s Pet. at 8-9.

Relevant provisions of § 541.060 of the Texas Insurance Code provide:

(a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:
>    (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
>    (2) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of:
>        (A) a claim with respect to which the insurer's liability has become reasonably clear;
>    . . .
>    (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;
>    (4) failing within a reasonable time to:
>        (A) affirm or deny coverage of a claim to a policyholder; or
>        (B) submit a reservation of rights to a policyholder;
>    . . .
>    (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim;
>     . . . .

---

3. Pursuant to § 17.50(a)(4) of the Texas Business and Commerce Code (the "DTPA"), Plaintiff contends that these alleged Insurance Code violations also violate the DTPA. Plaintiff's state court petition makes the following allegations against Thomas as violations of the DTPA §§ 17.46(b)(5), (7), (12); 17.50(a)(2), (3), (4): (1) representing to Plaintiff that the insurance policies and Defendants' adjusting and investigative services were of a particular standard, quality or grade when they were of another; (2) representing that he would properly investigate and pay Plaintiff's claim and then not doing so; (3) breaching an express warranty that the damages caused by a covered peril would be paid; and (4) Thomas' conduct, acts, omissions and failures as described in Plaintiff's petition, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA. Pl.'s Original Pet. at 7-8.

§ 541.002 defines a person for the purposes of chapter 541 as "an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster, or life and health insurance counselor."

The Texas Supreme Court determined that independent agents and brokers, as well as employees of insurance companies are "persons" under the Insurance Code. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485-86 (Tex. 1998). However, the *Liberty Mutual* Court emphasized that "not every employee of an insurance company is a 'person' under Article 21.21 . . . an employee who has no responsibility for the sale or servicing of insurance policies and no special insurance expertise, such as a clerical worker or janitor, does not engage in the insurance business." *Id*. at 486. The *Liberty Mutual* Court explained:

> To come within the statute, an employee must engage in the business of insurance. In this case, [defendant] personally carried out the transaction that forms the core of [plaintiff's] complaint. [Defendant] testified that his job responsibilities included soliciting and obtaining insurance policy sales and explaining policy terms to prospective buyers. He was also responsible for explaining premium calculations to consumers. [Defendant] was thus required to have a measure of expertise in the field, which was necessary to perform his job. Clearly, [defendant] was engaged in the business of insurance.

*Id*.

Great American and Thomas contend that with respect to Plaintiff's claim, Thomas was not engaged in the business of insurance and thus is not a "person" under chapter 541. Defs.' Br. at 8. Great American and Thomas contend that although Thomas is an adjuster, with respect to Plaintiff's claim, "Thomas had no involvement in the actual adjustment of the claim, the decision to pay, deny or investigate the claim and made no representations to the Plaintiff regarding the insurance policy or coverage." Defs.' Br. at 11. Defendant goes on to say, "[i]n summary, Thomas' only role with

7

respect to the claim which forms the basis of this lawsuit was as an investigator/courier to gather facts and data to be transmitted to the insurer so that the insurer could adjust the claim. The fact that Thomas happened to also be a licensed adjuster has no bearing on his role in this case since he was uninvolved in the adjustment of the claim and does not bear on whether he was engaged in the business of insurance." *Id*. at 11. Great American and Thomas argue that as set out by the Texas Supreme Court in *Liberty Mutual* and further refined by the Texas Court of Appeals in *Dagley v. Haag Engineering Company*, 18 S.W.3d 787, 792-93 (Tex. App. – Houston [14th Dist] 2000, no writ), to be subject to suit under chapter 541, the person "must have some specific 'insurance' involvement in the claim." Defs.' Br. at 8. In *Dagley*, the appellants argued that Haag Engineering Company "is an entity 'engaged in the business of insurance' because it was involved in the investigation of its claims and because it provided State Farm material on hail storm damage evaluation." *Dagley*, 18 S.W.3d at 792. The *Dagley* Court observed:

> [T]he term "business of insurance" has never been defined under article 21.21. . . . State Farm hired Haag to determine the extend of damage, if any, from the storm. Haag did not (1) participate in the sale or servicing of the policies, (2) make any representations regarding the coverage of the policies or (3) adjust any claims. As an independent firm hired to provide engineering services, it cannot be said that Haag is engaged in the business of insurance.

*Id*. at 793. Similar to the facts in *Dagley*, Great American and Thomas contend that Thomas was retained solely to assist in the investigation of the facts of Plaintiff's claim and did not (1) participate in the sale or servicing of Plaintiff's policy; (2) make any representations regarding the policy's coverage; or (3) adjust Plaintiff's claim. Defs.' Br. at 8. Therefore, Great American and Thomas contend that Thomas did not "engage in the business of insurance" and should not be held liable under § 541.060. *Id*. at 9. *But see Dallas Fire Ins. Co. v. Texas Contractors Sur. & Cas. Agency*, 128 S.W.3d 279, 290 (Tex. App. – Fort Worth 2004), *rev'd on other grounds*, 159 S.W.3d 895 (Tex.

8

2005) ("We also reject Dallas Fire's reliance upon *Dagley v. Haag Engineering Co.*, which held that Haag Engineering Co., hired to investigate a hailstorm claim under a homeowner's insurance policy, was not engaged in the 'business of insurance' under article 21.21 because the case is factually distinguishable. The court held that the *engineering services* provided did not constitute the 'business of insurance.'").

Plaintiff contends that since Thomas was an adjuster responsible for the investigation of Plaintiff's claim, Thomas falls under the definition of a "person" for the purposes of the Texas Insurance Code. Pl.'s Br. at 5; Pl.'s Pet. at 2. In applying a Rule 12(b)(6)-type analysis, this Court accepts as true all well-pleaded facts and views those facts in a light most favorable to Plaintiff. *Smallwood*, 385 F.3d at 573;*Campbell*, 43 F.3d at 975. The *Liberty Mutual* Court makes it clear that not every person doing work for an insurer falls under the definition of a person in § 541.002(2). *Liberty Mutual Ins. Co.*, 966 S.W.2d at 486. From the *Liberty Mutual* Court's distinguishing of work involving the sale/servicing of insurance policies from clerical/janitorial work, it appears that the more the work requires specialized insurance knowledge, the more likely it will be in the realm of "the business of insurance." *See id.* With respect to Thomas' investigative duties, although the tasks may not necessitate the degree of specialized insurance knowledge that an insurance sales or servicing person may need, this Court does not find that the investigative duties would be placed in the same category as clerical/janitorial work. The Court finds it telling that, although Thomas may not need to utilize the specialized insurance knowledge that he possesses as an adjuster in performing these investigative duties, Great American hired Thomas, a licensed insurance adjuster employed by Central Insurance Adjusters, to be their investigator/courier. Therefore, this seems to indicate that Thomas' specialized knowledge may be beneficial in the investigative effort, a benefit

9

that would be lacking had Great American retained a clerical/janitorial worker with no specialized insurance knowledge to gather the facts and data for Plaintiff's claim.  Having said that, this Court acknowledges that Great American and Thomas have raised some good arguments on this issue, but because of the uncertainty involved in this analysis under the Texas law, this Court is not able to conclude that Great American and Thomas demonstrated that there is no possibility of recovery by Plaintiff against Thomas.  *See Smallwood*, 385 F.3d at 573 n.10 (quoting *Parks*, 308 F.2d at 478 ("'[T]here can be no [improper] joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged, or on the facts in view of the law as they exist when the petition to remand is heard.'")).

Because this Court is not able to conclude that there is no reasonable basis to predict that the Plaintiff might be able to recover against Thomas with regard to Plaintiff's Texas Insurance Code claims, this Court does not address Great American's and Thomas' argument that Plaintiff has no standing to sue Thomas directly under the DTPA.  *See* Defs.' Br. at 6.

**IV.**

For the reasons stated above, Plaintiff's motion to remand is granted and Great American's and Thomas' motion to dismiss is denied.  Any other requests for relief not specifically addressed herein are denied.  This Court holds that it lacks subject matter jurisdiction and, pursuant to 28 U.S.C. § 1447, remands this case to the 116th Judicial District Court of Dallas County, Texas.  The District Clerk shall effect the remand according to the usual procedure.

So ordered, this 14th day of March, 2007.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

11